IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| MISTY ROGERS, | : |
| Plaintiff, | : |
| VS. | : |
| | : 7 : 12-CV-86 (HL) |
| CAROLYN W. COLVIN[1], | : |
| Acting Commissioner of Social Security, | : |
| Defendant. | : |

**RECOMMENDATION**

The Plaintiff filed this Social Security appeal on July 2, 2012, challenging the Commissioner's final decision denying her application for disability benefits, finding her not disabled within the meaning of the Social Security Act and Regulations. Jurisdiction arises under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted.

**LEGAL STANDARDS**

In reviewing the final decision of the Commissioner, this court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In reviewing the ALJ's decision for support by substantial evidence, this court may not

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, and is substituted for former Commissioner Michael J. Astrue as Defendant herein. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).

reweigh the evidence or substitute its judgment for that of the Commissioner.  "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence."  *Bloodsworth*, 703 F.2d at 1239.  "In contrast, the [Commissioner's] conclusions of law are not presumed valid. . . . The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."  *Cornelius*, 936 F.2d at 1145-1146.

Under the regulations, the Commissioner evaluates a disability claim by means of a five-step sequential evaluation process.  20 C.F.R. ▪ 404.1520.  In Step One, the Commissioner determines whether the claimant is working.  In Step Two, the Commissioner determines whether a claimant suffers from a severe impairment which significantly limits his ability to carry out basic work activities.  At Step Three, the Commissioner evaluates whether the claimant's impairment(s) meet or equal a listed impairment in Appendix 1 of Part 404 of the regulations.  At Step Four, the Commissioner determines whether the claimant's residual functional capacity will allow a return to past relevant work.  Finally, at Step Five, the Commissioner determines whether the claimant's residual functional capacity, age, education, and work experience allow an adjustment to other work.

*Administrative Proceedings*

The Plaintiff filed an application for Supplemental Security Income benefits with a protective filing date of July 7, 2008.  (T –102-106, 121).  Her claims were denied initially and upon reconsideration.  (T – 55-56).  A hearing was held before an ALJ on September 9, 2010.  (T – 34-54).  In a decision dated November 15, 2010, the ALJ determined that the Plaintiff was not disabled.  (T – 10-25).  The Appeals Council denied Plaintiff's request for review, making the November 2010 decision the final decision of the Commissioner.  (T- 1-6).

2

*Statement of Facts and Evidence*

The Plaintiff was 27 years of age at the time of the ALJ's decision on her claim.  (T – 121).  She has a high school education and no past relevant work experience.  (T –130,125).  Plaintiff asserts that she became disabled as of August 17, 2000 primarily due to bipolar disorder and post-traumatic stress disorder.  (T – 121-125).  As determined by the ALJ, Plaintiff suffers from severe impairments in the form of borderline intellectual functioning, bipolar disorder, personality disorder, post-traumatic stress disorder, and a history of alcohol and drug abuse, reportedly in remission.  (T - 15).  In his November 2010 decision, the ALJ found that the Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, with certain non-exertional limitations.  After relying on the Medical-Vocational Guidelines as a framework for decision making, the ALJ found that the Plaintiff was not disabled.  (T – 20).

## DISCUSSION

*Treating and examining physicians= opinions*

The Plaintiff asserts that the ALJ improperly discounted the opinions of treating physician Dr. Threlkeld and consultative examiner Dr. Garmon.  Pursuant to 20 C.F.R. ▪ 404.1527(e)(2), the Commissioner will Aconsider opinions from treating and examining sources on issues such as . . . your residual functional capacity . . . [although] the final responsibility for deciding these issues is reserved to the Commissioner.@  AA statement by a medical source that you are >disabled= or >unable to work= does not mean that we will determine that you are disabled.@  20 C.F.R. ▪ 404.1527(e)(1).  Good cause to discount the opinion of a physician has been found to exist Awhere the doctor=s opinion was not bolstered by the evidence, or where the evidence supported a contrary finding.  We have also found good cause where the doctors= opinions were conclusory or inconsistent with their own medical

3

records.@ *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (internal citations omitted).  As the *Lewis* court noted, A[w]e are concerned here with the doctors= evaluations of [the plaintiff=s] condition and the medical consequences thereof, not their opinions of the legal consequences of [her] condition.@ *Id.*

AAbsent >good cause=, an ALJ is to give the medical opinions of treating physicians >substantial or considerable weight= . . . With good cause, an ALJ may disregard a treating physician=s opinion, but he >must clearly articulate [the] reasons= for doing so.@ *Winschel v. Comm=r. of Social Security*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)).

The Plaintiff argues that Dr. Threlkeld's limitations were entitled to great weight and that the ALJ erred in discounting Dr. Threlkeld's opinions.   In regard to Dr. Threlkeld, the ALJ found

> [a]s for the opinion evidence, the undersigned gives some weight to Dr. Threlkeld's assessments except in the area of social interaction.   While the claimant may have some problems dealing with the public and responding to co-workers, the evidence does not indicate that she is substantially limited in this area.

(T – 19).

Other than this general reference to Dr. Threlkeld's assessments, the ALJ does not mention or reference Dr. Threlkeld's treatment of the Plaintiff or his findings in regard to the Plaintiff.

Dr. Threlkeld began treating the Plaintiff in 2006, and continued to do so until 2009.  (T – 225-233, 276-297, 299-330).   Dr. Threlkeld diagnosed the Plaintiff as suffering from Posttraumatic Stress Disorder, Panic Anxiety Disorder, and Bipolar Disorder.  (T – 303).   In a Mental Residual Functional Capacity Assessment dated March 5, 2009, Dr. Threlkeld found that the Plaintiff was Markedly Limited in her ability to interact appropriately with the general public and in her ability to accept instructions and respond appropriately to criticism from supervisors.  (T – 277).   Dr.

4

Threlkeld further found that the Plaintiff was Moderately Limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual, to work in coordination with others without being distracted, and to complete a normal workday and workweek without interruptions from psychologically based symptoms.  (T – 276-277).  Dr. Threlkeld also found that the Plaintiff was Moderately Limited in her ability to ask simple questions or request assistance and to get along with coworkers without distracting them or exhibiting behavioral extremes.  (T – 277).  Overall, Dr. Threlkeld found that Plaintiff had a Marked degree of limitation in Maintaining Social Functioning. (T – 288).

The ALJ did not discuss Dr. Threlkeld's opinions, his treatment of the Plaintiff, or his findings, nor did he provide specific reasons to reject the opinions issued by Dr. Threlkeld.  As the Plaintiff asserts, the ALJ's decision is void of any discussion or consideration of the specific findings and limitations issued by Dr. Threlkeld.  The Eleventh Circuit has clearly stated that, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. . . . [and] when the ALJ fails [to do so], we will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.'"  *Winschel*, 631 F.3d at 1179 (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)).  Moreover, pursuant to 20 C.F.R. § 404.1527(d)(2), "[the Social Security Administration] will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."

As in *Winschel*, the ALJ herein failed to address the opinion and findings of a treating physician (Dr. Threlkeld) or evidence consideration thereof.  "[W]ithout clearly articulated grounds for [the ALJ's decision], [the Court] cannot determine whether the ALJ's conclusions were rational and

5

supported by substantial evidence@ requiring that this matter be reversed and remanded.  *Id.*; *see also, Lawton v. Comm=r. of Social Security*, 2011 WL 2471475 (M.D.Ga. Docket No. 5 : 09-CV-239-MTT) (failure of ALJ to reference and assign weight to treating physicians=opinions, which were contrary to the ALJ=s residual functional capacity assessment, required reversal and remand).

Additionally, Dr. Garmon, a one-time consultative examiner, determined on February 5, 2009 that the Plaintiff's prognosis for recovery was "guarded" and that she suffered from bipolar disorder and borderline intellectual functioning.  (T – 252-257).  Dr. Garmon specifically noted that Plaintiff's "[s]ocial interactions are limited and she would have difficulty asking questions and relating to the general public without displaying aberrant behavior."  (T – 257).  The ALJ states that he incorporated the medical opinion of Dr. Garmon in his determination of the Plaintiff's residual functional capacity, although the ALJ does not mention the finding of a guarded prognosis, or the fact that Dr. Garmon's findings supported those of treating physician Dr. Threlkeld in regard to Plaintiff's social interaction limitations.  (T – 18, 19).  The ALJ failed to provide sufficient information from which the Court could determine whether he sufficiently considered and incorporated Dr. Garmon's findings regarding Plaintiff's social interaction limitations.

*Vocational expert testimony*

The Plaintiff also asserts that the ALJ erred in relying exclusively on the Medical-Vocational Guidelines (the "Grids") in finding the Plaintiff not disabled, in that Plaintiff was found to suffer from significant non-exertional limitations that restricted her ability to perform a full range of work at any level.  The ALJ determined that

> [a]fter careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to
> perform a full range of work at all exertional levels but with the
> following nonexertional limitations:   The [sic] claimant retains the

> ability to meet the basic mental demands of competitive, remunerative, unskilled work on a sustained basis.
>
> . . .
>
> [t]he claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. However, these limitations have little or no effect on the occupational base of unskilled work at all exertional levels. A finding of "not disabled" is therefore appropriate under the framework of Section 204.00 in the Medical-Vocational Guidelines.

(T – 17, 20).

Although the ALJ states that the Plaintiff suffers from non-exertional limitations that compromise her ability to perform work at all exertional levels, he does not specify these limitations, beyond his findings of severe impairments in the form of borderline intellectual functioning, bipolar disorder, and post-traumatic stress disorder. (T – 15, 17).

> The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform. However, "[e]xclusive reliance on the grids is not appropriate either when [the] claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills." . . . If *either* condition exists, the ALJ was required to consult a vocational expert.

*Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004) *quoting Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985).

"If nonexertional impairments exist, the ALJ may use the Grids as a framework to evaluate vocational factors, but must also introduce independent evidence, preferably through VE testimony, of the existence of jobs in the national economy that the claimant can perform." *Owens v. Comm'r. of Social Security*, 2013 WL 310074 *2 (11th Cir. Jan. 28, 2013). "Even a mild

mental impairment may prevent a claimant from engaging in the full range of jobs contemplated by the exertional category for which the claimant otherwise qualifies." *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989).

Herein, despite the existence of nonexertional impairments, the ALJ did not rely on independent evidence to support his conclusion that the Plaintiff could perform other work, and his decision is therefore not supported by substantial evidence. The ALJ's conclusion that Plaintiff's "limitations have little or no effect on the occupational base of unskilled work at all exertional levels" has specifically been held by the Eleventh Circuit to "lack[] sufficient clarity to allow a reviewing court to determine that the proper legal analysis was conducted" in this situation. *Owens*, 2013 WL 310074 at *3. Similarly, the ALJ's finding that the "claimant retains the ability to meet the basic mental demands of competitive, remunerative, unskilled work on a sustained basis" provides no basis for the Court to determine whether the ALJ conducted the proper analysis regarding Plaintiff's nonexertional impairments. "Absent testimony from a vocational expert, the ALJ's conclusion that [Plaintiff's] mental limitations do not significantly compromise her basic work skills or are not severe enough to preclude her from performing a wide range of [] work is not supported by substantial evidence." *Allen*, 880 F.2d at 1202.

*Conclusion*

Inasmuch as the Commissioner's final decision in this matter is not supported by substantial evidence and was not reached through a proper application of the legal standards, it is the recommendation of the undersigned that the Commissioner's decision be **REVERSED and REMANDED** pursuant to Sentence Four of § 405(g). On remand, the ALJ is directed to provide a detailed account of his consideration of the findings of Dr. Threlkeld and the weight assigned

thereto.  Consideration on remand should also include the consideration and incorporation of Dr. Garmon's findings regarding Plaintiff's social interaction limitations. which the Plaintiff contends were ignored by the ALJ.   The ALJ is further directed to provide a detailed finding regarding Plaintiff's non-exertional limitations, and to obtain the testimony of a vocational expert if necessary based on the Plaintiff's non-exertional limitations.

Pursuant to 28 U.S.C. ▪ 636(b)(1), the parties may file written objections to this Recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

**SO RECOMMENDED**, this 25th day of June, 2013.

                                             **s/ *THOMAS Q. LANGSTAFF***

                                             **UNITED STATES MAGISTRATE JUDGE**